# Exhibit 1

Fulton County Superior Court
***EFILED***LW
Date: 4/8/2021 4:16 PM
Cathelene Robinson, Clerk

## IN THE SUPERIOR COURT OF FULTON COUNTY
## STATE OF GEORGIA

| | |
|---|---|
| Clyde E. Leonard Jr., individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> PeachCap Tax & Advisory, LLC, David Harrison Miller, and Eric Steven Burnette, <br><br> Defendants. | CIVIL ACTION FILE NO. **2021CV348012** <br><br> JURY TRIAL DEMANDED |

## CLASS ACTION COMPLAINT

1.     Plaintiff Clyde E. Leonard Jr., individually and on behalf of all others similarly situated (the "Class," as more fully defined below), brings this class action against PeachCap Tax & Advisory, LLC ("PeachCap Advisory"), David Harrison Miller, and Eric Steven Burnette (collectively "Defendants"), for breaches of fiduciary duties owed to Plaintiff and similarly-situated PeachCap Advisory customers, who transferred funds to PeachCap Advisory and entrusted PeachCap Advisory to invest those funds at its prudent discretion.

2.     PeachCap Advisory is a professional services firm and registered investment advisor that charges a fee to provide financial advisory and investment management to its clients under a fiduciary standard.

3.     When PeachCap Advisory makes trades on behalf of its clients, it uses the services of a broker-dealer to execute those trades. This case involves PeachCap Advisory's decision to use

Copy from re:SearchGA

its affiliated broker-dealer, PeachCap Securities, Inc. ("PeachCap Securities") as that broker-dealer.

4.      PeachCap Advisory and PeachCap Securities share common ownership. On information and belief, Defendants Miller and Burnette, directly or indirectly, own some or all of both PeachCap Advisory and PeachCap Securities and collectively have a controlling interest in and controlling authority over each entity.

5.      Plaintiff and the other Class members are current and former clients of PeachCap Advisory. Plaintiff and the Class collectively deposited millions of dollars with PeachCap Advisory and vested PeachCap Advisory with full investment authority with respect to those funds.

6.      Plaintiff and the other Class members collectively paid millions of dollars in fees to PeachCap Advisory for PeachCap Advisory to manage their funds as faithful fiduciaries.

7.      In return for these fees, PeachCap Advisory was supposed to invest Plaintiff's and the other Class members' funds in compliance with its advisory agreement and under a fiduciary standard. Pursuant to this fiduciary standard, PeachCap Advisory is required, at all times, to act in Plaintiff's and the other Class members' best interests. PeachCap Advisory's fiduciary standard requires that it operate free from any undisclosed conflicts of interest and put Plaintiff's and the other Class members' interests ahead of its own. As owners of PeachCap Advisory, Defendants Miller and Burnette also owed the same fiduciary duties to Plaintiff and the other Class members.

8.      PeachCap Advisory, Miller and Burnette breached these duties by engaging in unlawful and quintessential self-dealing: Despite a market flush with unaffiliated, non-conflicted, and less expensive alternatives, PeachCap Advisory, Miller, and Burnette used their affiliated

2

Copy from re:SearchGA

broker-dealer, PeachCap Securities, to house client assets and execute transactions in client accounts. These affiliated and conflicted transactions generated unauthorized and unlawful commission payments from their affiliate, PeachCap Securities, and unlawfully enriched PeachCap Securities at the expense of Plaintiff and the other Class members. The receipt of unauthorized and unlawful commissions is a clear conflict of interest, a breach of PeachCap Advisory's contracts, and breaches PeachCap Advisory's and each of Miller's and Burnette's fiduciary duties to Plaintiff and the other Class members.

9.      PeachCap Advisory further violated its contractual and legal duties by enriching PeachCap Securities to the detriment of Plaintiff and the other Class members, because the fees charged by PeachCap Securities to custody client accounts were higher than the fees and payments Plaintiff and the other Class members would have paid at an unaffiliated broker dealer.

10.      In other words, instead of offering unbiased services pursuant to a fiduciary standard, PeachCap Advisory, Miller, and Burnette abandoned their fiduciary duties and, instead, advanced their own financial interests and those of their affiliate, PeachCap Securities, over those of their clients, improperly using client assets to generate unauthorized and unlawful commissions. PeachCap Advisory, Miller, and Burnette engaged in these transactions not because they were based on independent assessments of its clients' best interests, but rather to enrich themselves and their affiliate.

11.      In sum, while purporting to act as fiduciaries with respect to client accounts, PeachCap Advisory, Miller, and Burnette instead placed clients' assets in conflicted transactions, without proper authorization, and from which they derived improper and unauthorized payments and enriched themselves and their affiliate to the detriment of Plaintiff and the other Class

Copy from re:SearchGA

members. Defendants' self-dealing harmed Plaintiff and the other Class members, not only because unlawful commissions should not have been made at all and were excessive, but also because Defendants collected advisory and other fees from Plaintiff and the other Class members while PeachCap Advisory, Miller, and Burnette were acting as unfaithful fiduciaries and in violation of PeachCap Advisory's contracts.

12.     This action seeks to recover the millions of dollars in advisory fees that Plaintiff and the other Class members paid to PeachCap Advisory while it, Miller, and Burnette acted as unfaithful fiduciaries, all unauthorized commissions and other fees paid to the Defendants, as well as all damages authorized by law.

## PARTIES

### Plaintiff

13.     Plaintiff Clyde E. Leonard is a former client of PeachCap Advisory who retained PeachCap Advisory to provide discretionary investment management services under a fiduciary duty. As part of that retention, Mr. Leonard transferred funds to PeachCap Advisory and gave PeachCap Advisory all decision-making authority over those funds, trusting PeachCap Advisory to manage those funds under a fiduciary standard.

### Defendants

14.     PeachCap Advisory is a limited liability company organized under the laws of Georgia and headquartered at 550 Pharr Rd NE, STE. 700, Atlanta, GA, 30305, in Fulton County, Georgia.

15.     PeachCap Advisory is registered with the Securities and Exchange Commission ("SEC") as a registered investment adviser. As a registered investment adviser, PeachCap

4

Copy from re:SearchGA

Advisory provides discretionary portfolio management services to its clients under a fiduciary standard. Discretionary portfolio management means the investment adviser will make investment decisions and place buy or sell orders for clients at its sole discretion; that is, it makes investment decisions without obtaining a client's prior approval.

16.     PeachCap Advisory charges its clients a fee for its discretionary portfolio management services that is measured as a percentage of the market value of the assets it is managing. This fee is not transaction based.

17.     As of February 20, 2020, PeachCap Advisory manages approximately $100,121,615 in client assets on a discretionary basis.

18.     Non-party PeachCap Securities, Inc. is a SEC Registered Broker-Dealer and Member of the Financial Industry Regulatory Authority ("FINRA"). In its filings with FINRA, PeachCap Securities identifies PeachCap Advisory as an affiliate.

19.     PeachCap Securities offers brokerage services to retail investors. It offers for purchase or sale mutual funds, exchange-traded funds (ETFs), unit investment trusts (UITs), stocks, bonds, variable annuities, structured products, and private placements and houses various types of accounts, including 401(k), Roth 401(k), 403(b), Roth 403(b), IRA, Roth IRA, 457, 529 College Savings plans, SIMPLE IRA, SEP IRA, UGMA, UTMA and non-qualified accounts.

20.     PeachCap Securities charges fees for its brokerage services. These fees vary depending on the products purchased or sold. Fees paid to PeachCap Securities are based on a specific transaction, not the value of a customer's account. For example, with stocks or ETFs, the fee paid to PeachCap Securities is usually a separate commission. With other investments, such as

Copy from re:SearchGA

bonds, the fee is usually a part of the price a customer pays for the investment (called a "mark-up" or "mark-down").

21.     Defendant David Harrison Miller is the "Founder and Chairman of the Board" of PeachCap Advisory and is a Principal of PeachCap Securities. Miller is also a registered investment advisor with PeachCap Advisory. On information and belief, Miller, directly or indirectly, owns both PeachCap Advisory and PeachCap Securities in part and, together with Burnette, has authority to control both entities. On information and belief, Miller is a resident of Gwinnett County, Georgia.

22.     Defendant Eric Steven Burnette is "President and Chief Operating Officer" of PeachCap Advisory and is "President and Chief Compliance Officer" of PeachCap Securities. Burnette is also a registered investment advisor with PeachCap Advisory. On information and belief, Burnette, directly or indirectly, owns both PeachCap Advisory and PeachCap Securities in part and, together with Miller, has authority to control both entities. On information and belief, Burnette is a resident of Fulton County, Georgia.

23.     In summary, PeachCap Advisory is a registered investment advisor that provides fiduciary wealth management services to its clients and earns flat, rather than transaction-based fees. PeachCap Securities is a broker-dealer that does not operate under a fiduciary standard and that charges transaction-based fees to customers.

## JURISDICTION AND VENUE

24.     This Court has personal jurisdiction over the Defendants.

25.     This Court has jurisdiction over the subject matter of this action.

Copy from re:SearchGA

26.     Venue is proper in this Court pursuant to the Georgia Constitution and pursuant to O.C.G.A. § 14-2-510(b)(2) and 510(b)(3). Each of PeachCap Advisory and PeachCap Securities has an office and transacts business in Fulton County; the contract to be enforced in this action was made in and is to be performed in Fulton County; and the cause of action originated in Fulton County.

## FACTUAL ALLEGATIONS

### Overview of the Discretionary Investment Relationship

27.     Plaintiff and the other Class members are all persons or entities who hired PeachCap Advisory to provide discretionary investment management services under a fiduciary duty standard. As part of signing up for these financial advisory services, Plaintiff and the other Class members transferred millions of dollars in assets to PeachCap Advisory and trusted PeachCap Advisory, its principals, and its investment advisors to manage and invest those funds at their prudent discretion in accordance with strict fiduciary duties.

28.     Discretionary investment management is a form of investment management in which the client gives all decision-making authority over his or her assets to an investment manager. As part of the discretionary management relationship, the client turns over a portion of his or her assets to an investment manager, and trusts that manager to make all buy and sell decisions and executions for the client's account.

29.     The term "discretionary" refers to the fact that investment decisions and executions are made at the portfolio manager's sole discretion, rather than at the client's direction. The portfolio manager, not the clients, make buy, sell, and hold decisions, choosing what investments to make and exercising any trades, purchases, or sales. Plaintiff and the other Class members,

7

Copy from re:SearchGA

having ceded decision-making authority and execution to Defendants, do not buy or sell anything in the accounts that they opened with PeachCap Advisory.

30.   By turning decision-making authority over to the portfolio manager, the client relies on the manager to exercise the highest level of fiduciary care with respect to the relationship.

31.   When performed in accordance with applicable duties, the discretionary investment management relationship is intended, among other things, to free clients from making day-to-day investment decisions, which are made instead by a qualified and independent portfolio manager whose sole responsibility is supposed to be maximizing client return and acting in the client's best financial interest, carefully marshalling, protecting, and growing client assets.

32.   Discretionary investment management is also intended to align the investment manager's interests with the client's interests, since managers typically charge a percentage of the assets under administration as their management fee. In theory—and where a manager is acting in accordance with his or her fiduciary duties and free from conflicts of interests—if a client's portfolio grows under the investment manager's stewardship, the manager is compensated by receiving a higher dollar amount as the management fee.

33.   The discretionary investment management relationship is, therefore, dependent upon trust, transparency, and the faithful exercise of fiduciary duties, including the duty of care and the duty of loyalty. It also is vitally important that the relationship operate free from unauthorized conflicts of interest that could create incentives that are contrary to a client's best interests and interfere with a manager's faithful exercise of fiduciary duties.

Copy from re:SearchGA

**PeachCap Advisory's Agreements With and Representations to Plaintiff and the Other Class Members**

34.    Plaintiff and the other Class members signed an Advisory Agreement ("Agreement") with PeachCap Advisory pursuant to which PeachCap Advisory became their discretionary investment manager.

35.    The Agreement contains terms governing the relationship between PeachCap Advisory and its clients, including Plaintiff and the other Class members.

36.    The Agreement creates an agency relationship and provides that PeachCap Advisory will have discretionary authority to manage client accounts. For example, in paragraph 1(a) of the Agreement, the "Client . . . appoints the Adviser as an investment adviser to perform the services hereinafter described, and the Adviser accepts such Appointment." Paragraph 2(a)(i) authorizes PeachCap Advisory "to buy, sell, and trade in stocks, bonds, mutual funds, direct participation programs, other securities and/or contracts relating to the same, and/or other financial/investment products, on margin or otherwise, and to give instructions in furtherance of such authority to a registered broker-dealer, other financial institution, and/or the Custodian . . . of the Assets."

37.    The Agreement provides for how PeachCap Advisory is to be paid for its discretionary advisory services. In general terms, PeachCap Advisory is supposed to be paid a flat, non-transaction-based fee for its discretionary advisory services. Paragraph 5 of the Agreement, entitled "Adviser Compensation," provides that PeachCap Advisory will receive an Advisory Fee that is further described in "Appendix B." Appendix B contains a fee schedule for the "Adviser's service/fee."

Copy from re:SearchGA

38.     The advisor fee is not transaction based; rather, it is a flat fee that is determined by the amount of assets that are entrusted by a client to PeachCap Advisory.

39.     PeachCap Advisory's advisor fee decreases if a client entrusts more assets to the adviser. For example, PeachCap Advisory may charge 2.00% per annum on the first $500,000 transferred and entrusted to the adviser, charge 1.50% per annum on the next $500,000 entrusted to the adviser, and charge 1.25% on any amounts over $1,000,000 transferred and entrusted to the adviser.

40.     PeachCap Advisory's ability to accept commissions or other payments is limited by law governing investment advisers, but it is also further limited by contract. In particular, the Agreement expressly eliminates any right by PeachCap Advisory to profit in any way from its clients *other* than through payment of the advisory fee (or other expressly permitted fees) prescribed by the contract: "The Adviser shall not be entitled to cash or other Client Assets held by the Qualified Custodian except those monies owed to Adviser in connection with the *Adviser Compensation* section of this Agreement." Agreement at ¶ 4(d). Elsewhere, the Agreement provides that "Adviser shall not be compensated on the basis of a share of capital gains upon or capital appreciation of the funds or any portion of the funds of the client." Agreement at ¶ (5)(iv).

41.     Importantly, the Agreement does **not** provide that either PeachCap Advisory or its principals or individual advisors may receive unauthorized commissions or other fees from exercising its discretion to trade client funds through its affiliated broker-dealer, PeachCap Securities. The absence of such a provision makes sense, because such a kickback or otherwise unauthorized commission would create a conflict of interest and violate PeachCap Advisory's fiduciary duties to its clients.

Copy from re:SearchGA

42.     As alleged herein, PeachCap Advisory breached its contractual commitments and legal duties through its improper and unauthorized practice of accepting commissions from its affiliate, PeachCap Securities. These commissions are not authorized by the Agreement, and are prohibited as conflicted transactions that violate PeachCap Advisory's fiduciary duties.

**PeachCap Advisory's Fiduciary Duties**

43.     As noted, in its Agreement, PeachCap Advisory agreed to be a fiduciary with respect to the discretionary authority to manage and invest assets entrusted to it by its clients. The fiduciary duty is the highest duty implied by law.

44.     The fiduciary duty requires a party to act with the utmost good faith in furthering and advancing the other person's interests. The fiduciary duty includes a duty to disclose all relevant information, including disclosing all fees to the client. It also creates an affirmative duty to disclose any potential conflicts of interest.

45.     Federal and state law also imposes a fiduciary duty on PeachCap Advisory and its individual advisors. Money managers, investment consultants, and financial planners are regulated in the United States as "investment advisers" under the U.S. Investment Advisers Act of 1940 ("Advisers Act" or "Act") and similar state statutes.

46.     The Advisers Act does not provide a comprehensive regulatory regime for advisers, but rather imposes on them a broad fiduciary duty to act in the best interest of their clients.

47.     Fundamental to the Act is the notion that an adviser is a fiduciary. As a fiduciary, an adviser must avoid conflicts of interest with clients and is prohibited from overreaching or taking unfair advantage of a client's trust. A fiduciary owes its clients more than mere honesty and good faith alone. A fiduciary must be sensitive to the conscious and unconscious possibility of

Copy from re:SearchGA

providing less than disinterested advice, and it may be faulted even when it does not intend to injure a client and even if the client does not suffer a monetary loss.

48.     The fiduciary duty owed by PeachCap Advisory and its individual advisors requires them, at all times, to serve their client's best interests and not subordinate their client's interest to their own. In other words, the investment adviser cannot place its own interests ahead of its client's interests. This combination of care and loyalty obligations has been characterized as requiring the investment adviser to act in its client's "best interest" at all times. Under no circumstance does the fiduciary duty standard permit PeachCap Advisory, its principals, or its financial advisors, to put their interests above those of their clients, to engage in self-dealing, or otherwise to enrich themselves at their clients' detriment.

49.     The duty of care requires an investment adviser to provide investment advice in its client's best interests, based on the client's objective.

50.     Under its duty of loyalty, an investment adviser must eliminate, or at least expose, all conflicts of interest which might incline an investment adviser—consciously or otherwise—to render advice which is not disinterested, such that a client can provide informed consent to the conflict.

51.     With respect to conflicts of interest, a full and fair explanation concerning the presence of a conflict—coupled with informed consent—must be provided to the client. The explanation of the conflict must be sufficient so that the client is able to understand the conflict and make an informed decision whether to provide consent. Under no circumstance may an investment adviser obfuscate actual conflicts to the point where the client cannot provide informed consent, nor fail to entirely identify an actual or potential conflict. Any description of a conflict

Copy from re:SearchGA

must be clear and detailed enough for the client to make an informed decision to consent to the conflict of interest or reject it.

52.    Special considerations also govern circumstances where a registered investment adviser uses an affiliate broker-dealer to facilitate transactions.

53.    As a general matter, registered investment advisors do not house (i.e. hold the deposits of) client funds and do not themselves execute client trades. Those services must be performed by a broker-dealer—a company or other organization that is in the business of buying and selling securities or other investments on behalf of its customers. Because of the inherent conflict of interest that can otherwise arise, most registered investment advisors use independent, non-conflicted broker-dealers to house client funds and to exercise investment decisions.

54.    Registered investment advisers are not prohibited from using an affiliated broker-dealer to exercise trades. However, use of an affiliate involves a conflict of interest that must be explained to and authorized by the client. For example, the adviser must make full explanation of the nature and extent of all adverse interests, including the amount of any compensation the advisers will receive from its broker-dealer affiliate in connection with such transactions. Investment advisers who use affiliated broker-dealers must also inform their investment advisory clients of their ability to seek executions of transactions recommended through other broker-dealer firms.

55.    Thus, as fiduciaries, PeachCap Advisory and its individual advisers have an obligation to put their clients' best interests ahead of their own when making investment decisions. Should any potential conflicts arise at any point, the fiduciary standard requires PeachCap Advisory and its individual advisers to inform the client and resolve those conflicts in the client's

Copy from re:SearchGA

favor. And PeachCap Advisory must be honest and transparent with its fee structure. PeachCap Advisory must exercise independent judgment in making investments, making only those investments that are appropriate and in a client's best interest. And, finally, PeachCap Advisory must operate free from any unauthorized self-dealing.

## PeachCap Advisory, Miller, and Burnette Breach their Fiduciary Duties

56.     PeachCap Advisory, Miller, and Burnette used their discretionary authority to use the affiliated broker-dealer, PeachCap Securities, to invest client funds, generating an unauthorized and undisclosed commission for itself and incurring unnecessary and excessive costs on behalf of their clients.

57.     An illustrative example from Mr. Leonard's account with PeachCap Advisory is discussed in this paragraph: On August 5, 2016, PeachCap Advisory used its discretionary authority to sell 153 shares of the ProShares Ultra VIX Short-Term Futures ETF (UVXY). Mr. Leonard's account was charged a "Commission / Fees" for this transaction of $19.99:



58.     The above-described transaction flowed through PeachCap Advisory's affiliate, PeachCap Securities. Upon information and belief, these transactions generated an unauthorized and unexplained commission for PeachCap Advisory, Miller, and Burnette. These commissions

14

Copy from re:SearchGA

were in addition to the Advisory Fee paid pursuant to the Agreement and are not authorized by that Agreement.

59.      The charging of above-market rate commissions also constitute a failure to get best execution on each transaction where that commission was charged.

60.      Upon information and belief, Defendants received millions of dollars in advisory fees, transaction fees, and unauthorized commissions during the time PeachCap Advisory, Miller, and Burnette were unfaithful fiduciaries to Plaintiff and the other Class members.

61.      PeachCap Advisory did not explain its receipt of commissions from these transactions to Plaintiff or the other Class members. The listing of a commission on the trade confirmation summary report is not an explanation of the commission payment to PeachCap Advisory, Miller, or Burnette, because it does not explain that PeachCap Advisory, Miller, or Burnette, Plaintiff's fiduciaries, were receiving a kickback or other payment in connection with the transaction.

62.      PeachCap Advisory did not adequately explain to Plaintiff and the other Class members that its affiliate, PeachCap Securities, made money and enriched itself in connection with these transactions and, further, failed to explain that PeachCap Securities charged higher fees than other, unaffiliated broker-dealers would charge for the same services.

63.      PeachCap Advisory did not explain to Plaintiff and the other Class members that it and its advisors and principals would receive compensation outside of the Agreement for using its affiliate, PeachCap Securities, to invest client funds. To the contrary, PeachCap Advisory specifically promised that it would *not* "be entitled to cash or other Client Assets held by the

15

Copy from re:SearchGA

Qualified Custodian except those monies owed to Adviser in connection with the *Adviser Compensation* section of this Agreement." Agreement at ¶ 4(d).

64.     PeachCap Advisory did not explain to Plaintiff and the other Class members that its practice of rewarding individual advisors for using its affiliated broker-dealer, PeachCap Securities, might cause individual advisors to trade excessively in client accounts to generate additional income.

65.     PeachCap Advisory did not explain to Plaintiff and the other Class members that its practice of rewarding individual advisors for using its affiliated broker-dealer, PeachCap Securities, created an incentive to use PeachCap Securities even when other, unaffiliated broker-dealers could provide the same services as PeachCap Securities at a lower cost to Plaintiff and the other Class members.

66.     Here, PeachCap Advisory may point to its Form ADV as providing the required explanation. A Form ADV is the uniform form used by investment advisers to register with both the Securities and Exchange Commission (SEC) and state securities authorities. Although designed for a regulatory purpose, investment adviser filings of Part 1 are available to the public on the SEC's Investment Adviser Public Disclosure (IAPD) website. The Form ADV does not, however, form part of the contractual agreement with clients.

67.     PeachCap Advisory's Form ADV makes certain statements about "additional compensation" that arises from Miller and Burnette being principal owners of the firm. The Form ADV also has certain disclosures about "conflicts of interest" that may arise under certain circumstances (but which circumstances say nothing about owning the affiliated broker-dealer or using the affiliated broker-dealer to execute trades).

16

Copy from re:SearchGA

68.     These statements are woefully inadequate and insufficient to fully explain the conflict at issue in this case (they do not even address using the affiliated broker-dealer) and fail to mitigate that conflict for at least the following reasons:

a.     **First**, the "Additional Compensation" statement provides that "certain individuals who are associated with us . . . *may* also receive compensation (i.e. commissions) related to the sale of *securities* or *other investment products*" (emphasis added). That statement is both inapplicable and inaccurate. It is inapplicable because it refers to the "sale of securities or other investment products," not to the use of the affiliated broker-dealer. It therefore doesn't address the use of the affiliated broker dealer at all. It is inaccurate because it says Defendants Miller and Burnette "may" receive compensation when, on information and belief, Miller and Burnette *did in fact* receive additional compensation *every time* PeachCap Advisory used its discretionary authority to trade through its affiliated broker-dealer, and Miller and Burnette were fully aware that they *would*, not just "may," receive this compensation. At best, it is insufficient because it implies Defendants only might receive compensation in some limited circumstances when in reality, they knew they would make money through every transaction they directed in client accounts by executing all trades through their affiliate.

b.     **Second,** the "Conflicts of Interest" section says that PeachCap Advisory, "will accept compensation for the sale of *securities* or *other investment*

Copy from re:SearchGA

*products* . . ." (emphasis added). As with the "Additional Compensation" provision, this disclosure implies it does not refer to use of the affiliated broker-dealer at all, but instead that it applies instead to circumstances in which *other investment products* are sold that generate payments for PeachCap Advisory—a practice not at issue in this case.

c.    **Third**, the "Conflicts of Interest" section says that PeachCap Advisory, "[w]hen *recommending* the sale of securities or investment products for which [it] receives compensation, . . . *will document the conflict of interest in the client file and inform the client of the conflict of interest*" (emphasis added). This statement is doubly insufficient. First, it implies that a conflict only arises when PeachCap Advisory is *recommending* a product. In discretionary accounts, like the account held by Plaintiff and the other Class members, PeachCap Advisory is selling at its own discretion, and is not making "recommendations." Second, PeachCap Advisory is taking on an affirmative obligation of additional explanation. PeachCap Advisory did not provide this additional explanation to Plaintiff and, on information and belief, did not provide it to the other members of the Class.

d.    **Fourth**, the "Conflicts of Interest" section says that PeachCap Advisory "aggressively discourage[s] activities that put your interest anywhere but first." In fact, clients received no benefit from paying higher fees for the affiliated broker-dealer transactions and PeachCap Advisory did not put its clients interests first, and this statement is therefore inaccurate.

Copy from re:SearchGA

e.    **Fifth**, the "Conflicts of Interest" section states that "clients have the option to purchase . . . recommended products through other brokers or agents that are not affiliated with [PeachCap]." Again, this section appears to state that it applies only to "recommended" products, and in the accounts at issue in this action PeachCap Advisory is not making recommendations. Further, PeachCap Advisory did not inform Plaintiff of any option to use an unaffiliated broker-dealer, at no time provided him that option, and on information and belief did not do so for the other members of the Class.

f.    **Sixth**, the "Conflicts of Interest" section describes the conflict of interest as "commonplace in the investment industry," when in fact, on information and belief (and assuming this section even refers to the use of the affiliated broker-dealer, which it does not), the vast majority of investment advisors do not use an affiliated broker-dealer to exercise client trades.

g.    **Seventh**, nowhere does the Form ADV explain that the fees charged by the affiliated broker-dealer far exceeded the fees that could have been paid to an unaffiliated broker-dealer for the same services. Put differently, the Form ADV does not explain to clients that they are, in effect, receiving no benefit for enriching Defendants Miller and Burnette at the clients' expense.

69.    Thus, in summary, rather than act in accordance with their fiduciary obligations and the client agreements, PeachCap Advisory and its principals, Miller and Burnette, abandoned their fiduciary duties, engaged in unlawful self-dealing, and advanced their own financial interests at their clients' expense by (1) using their affiliated broker-dealer, PeachCap Securities, for

19

Copy from re:SearchGA

transactions on behalf of their clients even where lower cost alternative broker-dealer options were available; and (2) by receiving unauthorized and undisclosed kickbacks or other commissions from their affiliate, PeachCap Securities. These undisclosed and self-interested transactions enriched Defendants to the detriment of Plaintiff and the other Class members.

## CLASS ACTION ALLEGATIONS

70.     Plaintiff brings this action pursuant to O.C.G.A. §§ 9-11-23(a), 9-11-23(b)(2), and 9-11-23(b)(3), individually and on behalf of all others similarly situated.

71.     Plaintiff seeks to represent the following class ("the Class"):

> All persons or entities, for whom: (a) PeachCap Advisory had investment discretion over assets that they provided to PeachCap Advisory, pursuant to an advisory agreement or similar agreement; and (b) PeachCap Advisory used its discretionary authority to invest their assets through its affiliate, PeachCap Securities, as the broker-dealer.

72.     Excluded from the Class are Defendants Miller and Burnette and Defendant PeachCap Advisory and any of their members, affiliates, parents, subsidiaries, officers, directors, employees, successors, or assigns; the judicial officers, and their immediate family members; and Court staff assigned to this case. Plaintiff reserves the right to modify or amend the Class definition, as appropriate, during the course of this litigation.

73.     This action has been brought and may properly be maintained on behalf of the Class proposed herein under the criteria of O.C.G.A. § 9-11-23.

74.     **Numerosity – O.C.G.A. § 9-11-23(a)(1)**.   The members of the Class are so numerous and geographically dispersed that individual joinder of all class members is impracticable. PeachCap Advisory manages approximately $100,121,615 in client assets on a discretionary basis and, upon information and belief, there are hundreds of members of the Class.

20

Copy from re:SearchGA

The precise number of Class members is presently unknown to Plaintiff, but may be ascertained from Defendants' books and records. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

75. **Commonality and Predominance – O.C.G.A. §§ 9-11-23(a)(2) and -23(b)(3)**. This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, without limitation:

      a.     whether Defendants engaged in the conduct alleged herein;

      b.     whether Defendants' alleged conduct violates applicable law;

      c.     whether PeachCap Advisory failed to act solely for the benefit of Plaintiff and the other Class members, acting instead for its own benefit and for the benefit of PeachCap Securities;

      d.     whether PeachCap Advisory owed a duty of care in connection with providing advisory services to Plaintiff and the other Class members and whether PeachCap Advisory breached that duty;

      e.     whether PeachCap Advisory owed fiduciary duties in connection with providing advisory services to Plaintiff and the other Class members and whether PeachCap breached those duties;

      f.     whether Defendants' conduct caused Plaintiff and other members of the Class to suffer a compensable loss;

Copy from re:SearchGA

g.    whether Class members are entitled to damages, restitution, restitutionary disgorgement, equitable relief, statutory damages, exemplary damages, and/or other relief; and

h.    the amount and nature of relief to be awarded to Plaintiff and the other Class members.

76.    **Typicality – O.C.G.A. § 9-11-23(a)(3).**  Plaintiff's claims are typical of the other Class members' claims because Plaintiff and each of the other Class members were clients of PeachCap Advisory, who deposited funds with PeachCap Advisory and vested it with full investment authority with respect to those funds, which funds were thereafter placed into conflicted transactions, without proper authorization, that enriched Defendants. Plaintiff and the other Class members suffered damages as a direct and proximate result of the same wrongful practices in which Defendants engaged. Plaintiff's claims arise from the same practices and course of conduct that give rise to the claims of the other Class members.

77.    **Adequacy of Representation – O.C.G.A. § 9-11-23(a)(4).**  Plaintiff is an adequate Class representative because his interests do not conflict with the interests of the other members of the Class that he seeks to represent, Plaintiff has retained counsel competent and experienced in complex class action litigation, and Plaintiff intends to prosecute this action vigorously. The Class' interests will be fairly and adequately protected by Plaintiff and his counsel.

78.    **Declaratory and Injunctive Relief – O.C.G.A. § 9-11-23(b)(2).**  Defendants have acted or refused to act on grounds generally applicable to Plaintiff and the other Class members, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Class as a whole.

Copy from re:SearchGA

79.    **Superiority – O.C.G.A. § 9-11-23(b)(3).**  A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendants, so it would be impracticable for the Class members to individually seek redress for Defendants' wrongful conduct. Even if the Class members could afford litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

**CLAIMS ALLEGED**

**COUNT I**
**BREACH OF FIDUCIARY DUTY**
**(Against All Defendants)**

80.    Plaintiff realleges and incorporates by reference the allegations in ¶¶1-79, as if fully set forth herein.

81.    PeachCap Advisory, Miller, and Burnette were each a fiduciary of Plaintiff and of each of the other Class members.

82.    PeachCap Advisory, Miller, and Burnette each breached fiduciary duties to Plaintiff and each of the other Class members.

23

Copy from re:SearchGA

83.     PeachCap Advisory, Miller, and Burnette each failed to act in good faith and solely for the benefit of the Plaintiff and the other Class members in all matters for which PeachCap Advisory, Miller, and Burnette were employed, acting instead for each of their own benefit and for the benefit of their affiliates.

84.     PeachCap Advisory, Miller, and Burnette each failed to get best execution on each transaction for which an above-market rate commission was charged.

85.     Plaintiff and each of the other Class members sustained financial injury as a result of PeachCap Advisory's, Miller's, and Burnette's breaches of their fiduciary duties.

86.     PeachCap Advisory's, Miller's, and Burnette's failure to act solely for the benefit of Plaintiff and each of the other Class members was the proximate cause in fact of bringing about Plaintiff's and the other Class members' injuries.

87.     Plaintiff and each of the other Class members suffered actual losses as a consequence of these breaches of fiduciary duties and has been damaged in an amount to be proven at trial.

## COUNT II
### NEGLIGENCE
### (Against All Defendants)

88.     Plaintiff realleges and incorporates by reference the allegations in ¶¶1-87, as if fully set forth herein.

89.     PeachCap Advisory, Miller, and Burnette each owed a duty of care to Plaintiff and each of the other Class members to provide advisory services according to the standard of care imposed by law.

Copy from re:SearchGA

90.     PeachCap Advisory, Miller, and Burnette breached and failed to perform their duties as described herein.

91.     PeachCap Advisory's, Miller's, and Burnette's failure to perform their duties is the proximate cause of injury to the Plaintiff and each of the other Class members.

92.     Plaintiff and each of the other Class members have suffered actual losses as a consequence of these breaches of duties and has been damaged in an amount to be proven at trial.

**COUNT III**
**BREACH OF CONTRACT**
**(Against PeachCap Advisory)**

93.     Plaintiff realleges and incorporates by reference the allegations in ¶¶1-92, as if fully set forth herein.

94.     The Agreement is a contract between Plaintiff and each of the other Class members, on the one hand, and PeachCap Advisory, on the other hand.

95.     PeachCap Advisory has breached the essential terms of the contract. PeachCap Advisory promised Plaintiff and each of the other Class members that it would manage their funds according to a fee schedule in the Agreement. PeachCap Advisory breached the Agreement with Plaintiff and each of the other Class members by accepting unauthorized commissions or other kickbacks, making more money than authorized by the Agreement, and by causing its clients to be charged higher fees than those disclosed in the Agreement.

96.     Plaintiff and the other Class members have suffered actual injury and damages as a consequence of PeachCap Advisory's breaches, in an amount to be proven at trial.

Copy from re:SearchGA

## COUNT IV
### VIOLATION OF THE INVESMENT ADVISOR DECEITFUL PRACTICE PROVISIONS OF THE GEORGIA UNIFORM SECURITIES ACT OF 2008, O.C.G.A. § 10-5-1, ET SEQ.
### (Against All Defendants)

97.     Plaintiff realleges and incorporates by reference the allegations in ¶¶1-96, as if fully set forth herein.

98.     PeachCap Advisory, Miller, and Burnette each violated O.C.G.A. § 10-5-58(f) because they:

      a.     Received consideration for providing investment advice to Plaintiff and the other Class members; and

      b.     Engaged in an act, practice or course of business that operated as a deceit on the Plaintiff and the other Class members, as described herein.

99.     Plaintiff and the other Class members are consequently entitled to the consideration paid to PeachCap Advisory, Miller, and Burnette and the amount of actual damages caused by the wrongful conduct, interest from the date of the fraudulent conduct, costs, and reasonable attorney fees, all in an amount to be proven at trial or in an appropriate proceeding.

### REQUEST FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the other Class members he seeks to represent, respectfully requests that the Court enter judgment in his favor and against Defendants, as follows:

1.     Declaring that this action is a proper class action, certifying the Class as requested herein, designating Plaintiff as Class Representative, and appointing Plaintiff's attorneys as Class Counsel;

Copy from re:SearchGA

2.      Entering an injunction ordering PeachCap Advisory, Miller, and Burnette to refrain from further breaches of their fiduciary duties;

3.      Ordering Defendants to pay actual and statutory damages (including punitive damages) and restitution to Plaintiff and the other Class members, as allowable by law;

4.      Ordering Defendants to pay both pre- and post-judgment interest on any amounts awarded;

5.      Ordering Defendants to pay attorneys' fees and costs of suit; and

6.      Ordering such other and further relief as may be just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated:  April 8, 2021

|  |  |
|---|---|
| | _/s/ Joshua P. Gunnemann_ |
| Bryan M. Knight | Stephen D. Councill |
| Ga. Bar No. 142401 | Ga. Bar No. 190358 |
| Jonathan Palmer | Joshua P. Gunnemann |
| Ga. Bar No. 453452 | Ga. Bar No. 152250 |
| **KNIGHT PALMER, LLC** | **COUNCILL & GUNNEMANN LLC** |
| 1360 Peachtree Street NE | 1201 Peachtree Street N.E. |
| Suite 1201 | Building 400, Suite 100 |
| Atlanta, Georgia  30309 | Atlanta, Georgia  30361 |
| | Tel:  404-407-5250 |
| | scouncill@cogunn.com |
| | jgunnemann@cogunn.com |

*Counsel for Plaintiff and the Proposed Class*

Copy from re:SearchGA

**IN THE SUPERIOR COURT OF FULTON COUNTY
STATE OF GEORGIA**

| | |
|---|---|
| Clyde E. Leonard Jr., individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PeachCap Tax & Advisory, LLC, David Harrison Miller, and Eric Steven Burnette,<br><br>Defendants, | ) ) ) ) ) ) ) ) ) ) ) ) )   Civil Action File No.  2021CV348012 |

## ACKNOWLEDGMENT OF SERVICE

COMES NOW, PeachCap Tax & Advisory, LLC, Davidson Harrison Miller, and Eric Steven Burnette, defendants in the above-captioned action (together, "Defendants"), by and through the undersigned counsel, and without waiving any jurisdictional, venue, or other defenses, hereby acknowledge service of process of the Summons and Plaintiff's Complaint.

Defendants have conferred with Plaintiff and all parties agree that Defendants (i) shall be deemed to have been first served on May 10, 2021 and (ii) shall not be required to file their Answer and/or other responsive pleading until June 10, 2021. By filing this Acknowledgement, Defendants do not concede, acknowledge, or agree that jurisdiction is proper in this Court.

This 10th day of May 2021.

/s/ *Steven J. Rosenwasser*
Steven J. Rosenwasser
Georgia Bar No. 614908
James Z. Foster
Georgia Bar No. 756038

*Attorneys for Defendants*

**GREENBERG TRAURIG, LLP**
3333 Piedmont Road NE
Terminus 200, Suite 2500
Atlanta, Georgia 30305

Telephone: (678) 553-2100
Fax: (678) 553-2212

**IN THE SUPERIOR COURT OF FULTON COUNTY**
**STATE OF GEORGIA**

| | |
|---|---|
| Clyde E. Leonard Jr., individually and on behalf of all others similarly situated, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action File No.  2021CV348012 |
| | ) |
| PeachCap Tax & Advisory, LLC, David Harrison Miller, and Eric Steven Burnette, | ) |
| | ) |
| Defendants, | ) |
| | ) |

## CERTIFICATE OF SERVICE

I hereby certify that on this day I served the foregoing **ACKNOWLEDGEMENT OF SERVICE** by depositing a true and correct copy in the United States Mail, first class, with sufficient postage affixed thereon and properly addressed as follows:

Stephen D. Councill
Joshua P. Gunnemann
COUNCILL & GUNNEMANN LLC
1201 Peachtree Street N.E.
Building 400, Suite 100
Atlanta, Georgia 30361

Bryan M. Knight
Jonathan Palmer
KNIGHT PALMER, LLC
1360 Peachtree Street NE
Suite 1201
Atlanta, Georgia 30309

*Attorneys for Plaintiff*

This 10th day of May 2021.

/s/ *Steven J. Rosenwasser*
Steven J. Rosenwasser
Georgia Bar No. 614908